**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AEROCRINE AB and AEROCRINE INC., | ) | |
| Plaintiffs, | ) | C.A. No. 08-787-JJF |
| v. | ) | REDACTED PUBLIC VERSION |
| APIERON INC., | ) | |
| Defendant. | ) | |

**APIERON'S MOTION TO COMPEL AEROCRINE
TO ANSWER INTERROGATORIES, TO MAKE INVENTORS
AVAILABLE FOR DEPOSITION, AND TO PRODUCE ITS ACCUSED DEVICE**

Defendant Apieron, Inc. ("Apieron") submits this motion to compel discovery from Aerocrine AB and Aerocrine, Inc. (collectively, "Aerocrine") for Apieron's Interrogatories Nos. 1, 2, 8, 10, and 25, as they pertain to U.S. Patent No. 6,761,185; to compel Aerocrine to make its inventors available for deposition in the United States; and to compel English-language information in response to Apieron's Interrogatory No. 9.

## ARGUMENT

### I. This Court Should Compel Aerocrine To Answer Interrogatories and Produce Accused Products Relating to Flow Control

In a patent case focusing on medical devices capable of measuring nitric oxide in exhaled breath, Aerocrine has refused to answer straightforward questions relating to a key component of its device—the mechanism that adjusts the flow rate of breath—as that information is captured in one of Aerocrine's own patents, U.S. Patent No. 6,761,185 ("the '185 patent"). And Aerocrine has refused to provide working units of a device that it admits embodies this patent. These positions cannot be defended, and the Court should compel Aerocrine to provide complete

responses to Interrogatories Nos. 1, 2, 8, 10, and 25, all of which ask for information with respect to the '185 patent, and to produce two units of its accused NIOX® device.

This suit was brought by Aerocrine, which has alleged that Apieron's Insight™ eNO device infringes three of Aerocrine's patents. Apieron in turn has alleged that Aerocrine's devices, the NIOX®, NIOX FLEX® and NIOX MINO® (collectively, the Aerocrine "Accused Devices") infringe two of Apieron's patents. Of these patents-in-suit, at least three concern the way in which the medical device regulates the flow rate of nitric oxide from the patient and through the device—both of Apieron's patents (U.S. Patent Nos. 5,795,787 and 6,010,459) and Aerocrine's U.S. Patent No. 6,733,463. Aerocrine's '185 patent is directed to a flow-regulating device—the component of the medical device directly responsible for regulating the flow rate of exhaled nitric oxide. Aerocrine has admitted, in correspondence, that its Accused Devices embody the invention described in the '185 patent. *See* Ex. A[1] ("The 185 patent is directed to a flow regulating device used in the accused NIOX® devices.").

Because of this patent's clear relevance to the use and importance of flow regulation to Aerocrine's employees, as embodied in Aerocrine's accused products, Apieron's initial sets of interrogatories sought information on this patent. Aerocrine **REDACTED** **REDACTED** Now that Aerocrine has added a new patent to this case—the '463 patent—which also concerns this exact subject matter of flow regulation, it is confronted with the unpleasant reality that the '185 patent is anticipating prior art. Its status as crucial prior art makes Apieron's interrogatories regarding the '185 patent relating to conception, reduction to practice, and first disclosures undeniably relevant.

[1] Citation to Exhibits A through L herein refer to the exhibits to the Declaration of Sarah R. Stafford in support of this Motion filed contemporaneously herewith.

The relevance of the '185 patent as anticipating prior art to the '463 patent is plain from the face of the two documents. The '185 patent, with different inventors than the '463 patent, claims priority to a Swedish patent application filed on December 22, 1999. The earliest application to which the '463 patent can claim priority is a provisional U.S. filing on May 15, 2001. But most tellingly, the prior art '185 patent and asserted '463 patent describe their inventions using almost identical language. For example, one of the claims that Aerocrine has stated it will assert against Apieron is directed (in part) to:

> a flow rate adjuster for adjusting the flow rate of exhaled air flowing through said tube to be substantially predetermined in magnitude during the measurement of nitric oxide concentration.

'463 patent at Claim 4. The '185 patent uses nearly the same language to describe the invention it purports to disclose:

> Many diseases may be diagnosed by studying the concentration of certain substances, for example nitric oxide, in the exhalation air of a person . . . There is . . . a need for a device that will create a constant flow of exhaled air . . . The object of the present invention is to provide such a device.

'185 patent, col. 1, ll. 16-24 ("Background of the Invention"). Accordingly, the information that Apierion seeks through its interrogatories, including, for example, the date of conception and reduction to practice of the '185 patent, is relevant to whether the '185 patent anticipates at least claim 4 of the '463 patent. Additionally, given that the Aerocrine has admitted that the Accused Devices contain a flow regulator that is covered by one or more claims of the '185 patent, the information Apieron seeks is further relevant to whether the claims of the '463 patent are anticipated by the public use, sale, offer for sale, or disclosure of the invention of the '185 patent or a device that embodied it.

Additionally, as Apieron has maintained throughout this case, the '185 patent is relevant to Apieron's claims of infringement. The claims of both patents that Apieron has asserted

against Aerocrine are directed, in part, to the "flow rate" of exhaled air. *See* U.S. Patent No. 6,010,459 at Claim 1 ("method for measuring components of exhaled breath . . . at a substantially constant low flow rate"); U.S. Patent No.5,795,787 at Claim 2 ("apparatus . . . for reducing the flow rate of said air exhaled by the person through said conduit means"). It is only logical then, that Apieron has sought information about a patent which Aerocrine has admitted covers the relevant part of its Accused Devices, and has sought to obtain units of that device. Such information, and the testing of the relevant device, will allow Apieron to understand with more specificity how the pertinent parts of the Aerocrine Accused Devices were designed to work. This is directly relevant to infringement. In addition, through this discovery, Apieron seeks, for example, to learn who at Aerocrine worked on the development of the technology described in the '185 patent. Knowledge of the identity of these individuals could allow Apieron to discover, for example, through deposition and further document discovery, whether these individuals relied on or incorporated the technology claimed and covered by the Silkoff patents into their work and into the Aerocrine Accused Devices.

Aerocrine has provided no reasonable basis for its refusal to answer interrogatories that call for information about the '185 patent. In a letter dated September 25, 2009, counsel for Aerocrine stated that because the '185 is not a patent in suit, the information sought with respect to the '185 patent is "not relevant to the claims in this litigation." Ex. A. The letter further stated that "[t]he '185 patent simply does not stand on equal footing with the patents that are at issue in this case." *Id.* Whether the '185 patent is a patent in suit, however, is beside the point. The point is whether the information sought by the interrogatories is relevant to the claims in this case. As explained above, the information is highly relevant to issues of both validity and infringement.

Not only does Aerocrine seek to avoid providing information about the '185 patent, it also refuses to produce the very NIOX® device accused of infringement in this case. Apieron originally requested three each of the Accused Devices, with sufficient consumables for 100 tests of each. Ex. B at 4 (Request No. 1). In an effort to reach compromise, Apieron reduced the number of requested devices to two. Ex. C at 1. Yet Aerocrine continues to refuse to produce *any* NIOX® devices. Ex D at 1. Aerocrine instead proposes to have Apieron inspect the device at its offices in New Jersey. This proposal is a non-starter. It would severely restrict access to the device and would not permit Apieron to test the device or to disassemble it to see how it works. Aerocrine objects that the device has a list price of $30,000. *Id.* But the parties have already expended enormous sums in litigating this lawsuit, which of course was initiated by Aerocrine, and Apieron will return the devices at the conclusion of the litigation. And the list price is the price that Aerocrine seeks to sell the device in the marketplace; it does not represent the actual cost to Aerocrine, which presumably is much lower. Aerocrine also notes that the device weighs 80 pounds, though Apieron is unaware of authority in the Federal Rules that permits a party to avoid the production of relevant documents or things on the basis of weight.

In sum, Apieron requests that this Court direct Aerocrine to provide responses to Apieron's interrogatories that seek information concerning the '185 patent and to produce two units of its NIOX® device, with accessories and consumables sufficient for 100 tests each.

## II. This Court Should Compel Aerocrine To Make Its Inventors Available For Deposition In The United States Or Preclude Them From Testifying At Trial

Aerocrine's lawsuit alleges infringement of three of its patents, U.S. Patent Nos. 5,922,610 ("the '610 patent"), the 6,038,913 ("the '913 patent"), and the '463 patent. The inventors of the '610 and '913 patents reside in Sweden, while the inventors of the '463 patent reside in Finland. Apieron moves this Court to compel Aerocrine to produce the inventors of its

patents for depositions in the United States, or to reimburse Apieron for any expenses incurred in holding those depositions abroad.

Apieron has repeatedly requested that Aerocrine make its inventors available for deposition in the United States. *See* Exs. C, E, F. Apieron has offered to make available its foreign inventor, Ms. Patricia McClean, for deposition in the United States. *See* Exs. C, G at 2. Yet Aerocrine's position is that it will make *none* of its inventors available in the United States. Rather, it will "make the 913 patent inventors and Dr. Kjell Alving, an Aerocrine employee, available for deposition in Sweden." Ex. D at 2. Aerocrine further takes the position that it "does not control the 610 and 463 inventors, other than Dr. Alving, either by virtue of their assignment agreements or in any other manner." Ex. H at 1; *see also* Ex. I.

Aerocrine, which initiated this infringement suit in the District of Delaware, has no basis to insist that Apieron travel to another country to conduct the depositions of the inventors of Aerocrine's own patents. "The general rule is that a plaintiff must produce its witnesses for depositions in the district where the plaintiff instituted the action unless the plaintiff has shown financial hardship or inability to attend the deposition in that district." *Bayer AG v. Sony Elecs. Inc.*, No. 95-8-JJF, at 5 (D. Del. Sept. 30, 1998) (D.I. 237, attached hereto as Attachment 1).

Dr. Alving is one of the inventors on the '610 patent. He is **REDACTED**

**REDACTED**

*See* Ex. J Aerocrine could without question make Dr. Alving available for a deposition in the United States. The remaining inventors on the '610 patent **REDACTED**

Indeed, the remaining two inventors, Edward Weitzberg and Jan Lundberg, are **REDACTED**. *See* Ex J at 3. **REDACTED**



RLF1-3451196-1

REDACTED . *Id.* Dr. Weitzberg and Dr. Lundberg . *Id.*[2] Aerocrine should make these inventors available for a deposition in the United States.[3]

Of the inventors of the '913 patent, Lars Erik Gustafson is REDACTED and appears to have options equating to nearly 200,000 shares of Aerocrine stock. *See* Ex. J , Ex. K at AER00030576-AER00030577. Moreover, the three inventors of the '913 patent executed an assignment agreement with Aerocrine in which they each agreed "to testify in any judicial or administrative proceeding and generally to do everything possible to aid [Aerocrine AB] to obtain and enforce said letters Patent *in the United States* when requested to do so by [Aerocrine AB]." Ex. L at AER00031423 (emphasis added). There can be no doubt that this assignment agreement binds each inventor to testify at a deposition in the United States to enforce the '913 patent; Aerocrine need only request them to do so. Courts have held that assignment agreements with similar language require that the inventors to be made available for deposition in the United States. *See, e.g., Amgen, Inc. v. Ariad Pharms. Inc.*, 2007 WL 1425854, at *1 (D. Del. May 14, 2007) (inventors agreed to "the giving of testimony in any interference or other proceeding"); *see also In re Nifedipine Capsule Patent Litig.*, 1989 WL 111112, at *1 (S.D.N.Y. Sept. 20, 1989) (inventors "agree[d], whenever requested . . . to testify in any legal proceedings").

---

[2] According to Aerocrine's response to Interrogatory No. 10, REDACTED REDACTED Ex. J at Aerocrine's interrogatory response does not REDACTED

[3] Indeed, Aerocrine has already demonstrated that it can obtain the cooperation of its inventors, as it has represented that it has requested documents from, and received documents from, all of its foreign inventors in this case.

Aerocrine's only response on this point is in its July 31, 2009 letter, in which it cites to *Medpointe Healthcare Inc. v. Apotex Inc.*, 2007 WL 211202 (D. Del. July 26, 2007). *See* Ex. H at 2. In *Medpointe*, the inventor had signed an agreement 25 years before with a predecessor company. Critically, in the assignment agreement in that case, the explicit requirement to testify was only made between the inventor and the predecessor company, rather than its successors and assigns. 2007 WL 211202, at *2. In addition, the inventor in *Medpointe* had agreed to consent to Hague Convention procedures. *Id.* The court concluded that, "under the circumstances at bar", a deposition under the Hague Convention was "the most appropriate manner in which to proceed." *Id. Medpointe* is clearly *not* on point for the circumstances of this case. By contrast, the '913 assignment agreement is of relatively recent vintage, is made directly with Aerocrine, and explicitly and unequivocally requires the inventors to testify in the United States upon Aerocrine's request. Apieron respectfully submits that this Court should require that Aerocrine make the inventors of the '913 patent, in addition to the '610 inventors, available for deposition in the United States.[4]

With respect to the '463 inventors, Aerocrine appears to take the position that it has no control over them, and that Apieron's only recourse is to pursue Hague Convention requests for their testimony.[5] *See* Exs. D at 2, H at 1, I. But these inventors of a patent-in-suit are hardly

---

[4] In the alternative, Apieron would be willing to travel to Sweden for the depositions, provided that Aerocrine reimburse Apieron for the costs and agree that the depositions will proceed pursuant to the Federal Rules of Civil Procedure. The costs would include travel costs of the attorneys and a translator of Apieron's choosing, the travel time charged by the attorneys, and the costs of accommodation and meals. *See Bayer AG v. Sony Electronics, Inc.*, 202 F.R.D. 404, 409 & n.4 (D. Del. 2001).

[5] While Apieron has filed a motion for the issuance of Hague requests as to these inventors, *see* D.I. 65; D.I. 86, it is unlikely that Apieron will be able to take their depositions prior to the close of fact discovery on February 19, 2010. Requests made through the Hague convention take approximately "6 months to a year to execute,"

witnesses over whom Aerocrine exercises no control. When Aerocrine sought the cooperation of these inventors (and the inventors of the other asserted patents) in this matter, to search for and collect documents in their possession, the inventors cooperated. Aerocrine would have this Court believe that now that Apieron seeks the inventors' testimony, these inventors have left Aerocrine's ambit of control. The inventors of the '463 patent were REDACTED

REDACTED *See* Ex J It appears that Aerocrine may be seeking to avoid testimony that it knows will be harmful, if not devastating, as these inventors have been accused of inequitable conduct for their failure to cite to the PTO plainly invalidating references that they cited in their peer-reviewed publications within months of filing their patent application. *See* D.I. 74 ¶¶ 42-56. At the very least, Apieron requests that this Court issue an order that if the inventors are not made available for deposition in the United States, then Aerocrine is precluded from calling these inventors as witnesses in the trial of this case. *See Dickinson v. Fairly Bike Mfg.*, 1993 WL 147275, at *1 (E.D. Pa. May 5, 1993) ("Of course, defendants will be precluded from presenting trial testimony from any witness who has not previously been made reasonably available for a deposition.").

## III. This Court Should Compel Aerocrine To Provide English-Language Accounting Information In Response to Interrogatory No. 9

Apieron's Interrogatory No. 9 requests "the fixed and variable costs incurred in connection with each device unit sold." This information is plainly relevant to issues of commercial success and damages. Aerocrine does not appear to REDACTED

REDACTED

Aerocrine stated, "Aerocrine has identified over 20 . . . documents, which include

---

http://travel.state.gov/law/info/judicial/judicial_689.html (last visited Oct. 19, 2009), and in the experience of undersigned counsel, the process often takes much longer.

gross profit and costs of goods sold (COGS) information. It is Aerocrine's obligation to provide such documents as they are prepared in the ordinary course of business, and Aerocrine has done so." Ex. D at 2. Aerocrine further suggested that while many of the documents are in Swedish, "headings may be easily translated through, for example, online translators." *Id.*

Aerocrine's position is baseless. Under Federal Rule of Civil Procedure 33(d), a party may respond to an interrogatory by producing documents only "if the burden of deriving or ascertaining the answer will be substantially the same for either party." The burdens are not remotely the same in this case. The present lawsuit is brought on behalf of Aerocrine AB, a Swedish company, and Aerocrine, Inc., its United States subsidiary. There would be minimal burden on Aerocrine to generate English-financial information in response to the interrogatory. By contrast, Apieron would have to expend considerable effort to derive the requested information by searching through more than 20 documents that it would first have to translate from Swedish. Courts have held that companies cannot rely on foreign language documents to satisfy interrogatory responses, *see, e.g.*, *Sungjin Fo-Ma, Inc. v. Chainworks, Inc.*, 2009 WL 2022308, at *4-6 (E.D. Mich. July 8, 2009), and this Court should so hold here. Aerocrine should be directed to provide English-language information in response to Apieron's Interrogatory No. 9.

*/s/ Sarah R. Stafford*
Jeffrey L. Moyer (#3309)
moyer@rlf.com
Sarah R. Stafford (#5234)
stafford@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700

*Attorneys for Apieron Inc.*

OF COUNSEL:

Bruce R. Genderson
Edward J. Bennett
David I. Berl
Thomas J. Roberts
Jamie L. Simpson
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

Dated: October 19, 2009

**CERTIFICATE OF SERVICE**

I hereby certify that on October 19, 2009, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following and which has also been served as noted below:

**HAND DELIVERY AND ELECTRONIC MAIL**

Jack B. Blumenfeld
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

**ELECTRONIC MAIL**

Kelsey I. Nix
Diane C. Ragosa
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099

/s/ *Sarah R. Stafford*
Sarah R. Stafford (#5234)