IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AEROCRINE AB and AEROCRINE INC., | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 08-787 LPS |
| | ) | |
| v. | ) | **REDACTED PUBLIC VERSION** |
| | ) | |
| APIERON INC., | ) | |
| | ) | |
| Defendant. | ) | |

**AEROCRINE'S OPENING BRIEF IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT ON ITS CONTRACT DEFENSE**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Thomas C. Grimm (#1098)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
tgrimm@mnat.com

*Attorneys for Plaintiffs Aerocrine AB and Aerocrine Inc.*

*Of Counsel*

Kelsey I. Nix
Diane C. Ragosa
Robert G. Kofsky
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000

March 16, 2010 - Original Filing Date
March 23, 2010 - Redacted Filing Date

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... II

I.   SUMMARY OF ARGUMENT ........................................................................................1

II.  STATEMENT OF FACTS ...............................................................................................2

    A.   Background ............................................................................................................2

    B.   The Aerocrine-Ionics Settlement Agreement ........................................................3

    C.   The Ionics-Apieron Assignment Agreement .........................................................4

III. ARGUMENT .....................................................................................................................5

    A.   Summary Judgment Standard ................................................................................5

    B.   Contract Interpretation Is A Matter Of Law ..........................................................6

    C.   Aerocrine Enjoys A CNS Under The Silkoff Patents ............................................6

        1.   Allowing The CNS To Be Voided By A Simple Assignment Would Destroy The Benefit Of Aerocrine's Bargain ..........................................................................................................6

        2.   Ionics Could Assign, And Did Assign, To Apieron Only The Rights It Owned In The Silkoff Patents ..............................................8

        3.   The CNS Is Binding On Ionics' Assigns ...................................................9

IV.  CONCLUSION ................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*116 Commonwealth Condominium Trust v. Aetna Cas. & Surety Co.*,
   742 N.E.2d 76 (Mass. 2001) ................................................................................................. 5

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................................................................. 5

*Lumbermans Mut. Cas. Co. v. Offices Unlimited, Inc.*,
   645 N.E.2d 1165 (Mass. 1995) ............................................................................................ 6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ............................................................................................................. 5

*Robert Indus., Inc. v. Spence*,
   291 N.E.2d 407 (Mass. 1973) .............................................................................................. 6

*SRI Int'l Inc. v. Internet Security Systems, Inc.*,
   511 F.3d 1186 (Fed. Cir. 2008) ............................................................................................ 5

*V-Formation, Inc. v. Benetton Group SpA*,
   No. 02-02259, 2006 WL 650374 (D. Colo. Mar. 10, 2006) ........................................... 7–10

**RULES AND STATUTES**

Fed. R. Civ. P. 56(c) .................................................................................................................... 5

# TABLE OF ABBREVIATIONS

| Abbreviation | Explanation |
|---|---|
| Aerocrine | Plaintiffs Aerocrine AB and Aerocrine Inc. (jointly) |
| Apieron | Defendant Apieron Inc. (formerly Aperon Biosystems, Inc.) |
| Assignment Agreement | The assignment and license agreement between Ionics and Apieron, dated June 16, 2004 (Ex. 7) |
| CNS | Covenant not to sue |
| Ex. ___ | Refers to the indicated exhibit attached to the accompanying Declaration Of Robert G. Kofsky In Support Of Aerocrine's Motion For Summary Judgment |
| FDA | United States Food and Drug Administration |
| Ionics | Ionics, Incorporated and its wholly-owned subsidiary Sievers Instruments, Inc. |
| NO | Nitric oxide |
| Settlement Agreement | The settlement agreement between Ionics and Aerocrine, dated August 29, 2003 (Ex. 4) |
| Silkoff patents | U.S. Patent Nos. 5,795,787 and 6,010,459 asserted by Apieron against Aerocrine, and their foreign counterparts |
| *Emphasis* | All emphasis in quoted text is added unless otherwise noted. |

## I. SUMMARY OF ARGUMENT

Aerocrine asserts three patents in this case, and Apieron asserts two patents (the U.S. Silkoff patents). ███████████████████████████████████████████

███████████████████████████████████████████ The company that granted the CNS, Ionics, later assigned the Silkoff patents to Apieron.[1] As a matter of law, the assignment did not void Aerocrine's CNS for three reasons.

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████ Voiding Aerocrine's CNS, however, would deprive Aerocrine of the benefit of its bargain. Tellingly, when Ionics assigned *its* rights in the Silkoff patents to Apieron, Ionics (a) retained a 25% kickback on any licensing proceeds that Apieron received from third parties and (b) received a royalty-free license under the Silkoff patents back from Apieron. Plainly, Ionics cannot grant a paid-up CNS to Aerocrine and then extract a royalty from Aerocrine through the artifice of an assignment of those same patents.

Second, a seller can only sell what it owns. Ionics, when assigning to Apieron, did not own the right to sue Aerocrine for infringement of any of the Silkoff patents. Thus, it could not have assigned that right to Apieron. In fact, the Assignment Agreement specifically confirms that Ionics only assigned *its* right, title and interest in the Silkoff patents to Apieron.

---

[1] A table of abbreviations is provided at page iii for the Court's convenience.

Finally, the Settlement Agreement is consistent with the law on assignment of patents that are subject to a CNS. ███████████████████████████████████████████ As the assignee of the Silkoff patents that form the basis for the CNS, the CNS is binding on Apieron.

This motion is dispositive of Apieron's infringement case. And this motion is well-suited for summary resolution because contracts are interpreted as a matter of law.

## II. STATEMENT OF FACTS

### A. Background

Aerocrine is a medical technology company dedicated to improving asthma management and care. Aerocrine was founded in 1997 by scientists at the Karolinska Institute in Sweden who discovered that nitric oxide ("NO") in exhaled breath is elevated in patients with asthma. (Ex. 1.)[2] According to the Centers for Disease Control and Prevention, over 23 million people in the United States have asthma. (Ex. 2.)

Based on proprietary technology, Aerocrine developed a pioneering device for monitoring lung inflammation by measuring NO in the exhaled breath of patients. The NIOX® analyzer was the first device approved in Europe (2000) and the United States (2003) for clinical use to detect exhaled NO. (Ex. 1.) Both Aerocrine's NIOX® MINO® hand-held monitor and NIOX® FLEX desk-top system also incorporate Aerocrine's proprietary technology.

Apieron filed a 510k with the FDA in November 2007 seeking approval to market a device called the Insight™ eNO System. In its 510k submission, Apieron claimed that Insight™ was substantially equivalent to Aerocrine's NIOX® analyzer that had been sold in Europe since 2000. The FDA approved Insight™ in 2008.

---

[2] *See* the accompanying Declaration of Robert G. Kofsky in Support of Aerocrine's Motion for Summary Judgment.

Aerocrine sued Apieron for patent infringement in October 2008 (D.I. 1) and later added two patents. (D.I. 6, D.I. 63.) Aerocrine specifically pled its CNS. (D.I. 6, ¶ 29; D.I. 63, ¶ 32.) Apieron counter-claimed that Aerocrine infringes the two U.S. Silkoff patents. (D.I. 11.)

In July 2009, Apieron sued Aerocrine AB for infringement of the German counterpart patent to the Silkoff 459 patent in the regional court in Mannheim, Germany. (Ex. 4.) Mannheim is a "rocket docket," and that case is set for a second hearing on April 23, 2010.

### B.  The Aerocrine-Ionics Settlement Agreement

Aerocrine settled an infringement litigation against Ionics in August 2003. ███
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████████████████
████████████████████
██████████████████████████████
██████████████████████████████
██████████████████████████████
████████████████████
██████████████████████████████
██████████████████████████████



**C.     The Ionics-Apieron Assignment Agreement**

The relevant provisions of the Assignment Agreement (Ex. 7) are set forth below.

Section 2.4 is Ionics' representations and warranties and includes in relevant part:

> Ionics hereby represents, warrants and covenants to Aperon that:
> ... (c) after the consummation of the transactions contemplated hereby, Ionics shall have transferred *its* entire right and interest in the Assigned Patents to Aperon.

Exhibit B is the actual assignment of the Silkoff patents to Apieron and provides in relevant part:

> ASSIGNOR hereby . . . sells, assigns, transfers and sets over to ASSIGNEE *its* entire worldwide right . . . in and to the Patents . . . the same to be held and enjoyed by ASSIGNEE for its use and enjoyment . . . as the ***same would have been held and enjoyed by ASSIGNOR if the assignment and sale had not been made***[.]

Section 2.1 is the assignment provision and provides in relevant part:

> Subject to the terms and conditions of this Agreement, Ionics hereby assigns to Aperon all rights, title, and interest in and to the patents . . . .

Section 2.2(a) defines the 25% kickback provided to Ionics from any third-party licensing of the Silkoff patents:

> In addition, Aperon agrees to pay Ionics twenty-five percent (25%) of any licensing payments and other royalties received from a third party as consideration for the grant of any licenses of the Assigned Patents.

## III. ARGUMENT

### A. Summary Judgment Standard

Summary judgment shall be granted when there is "no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In patent cases, as in cases generally, summary judgment is appropriate when no genuine issue of material fact exists. *See SRI Int'l Inc. v. Internet Security Systems, Inc.*, 511 F.3d 1186, 1192 (Fed. Cir. 2008). A fact is "material" only if it will affect the outcome of the suit, and a dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To avoid summary judgment, Apieron must present specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

### B. Contract Interpretation Is A Matter Of Law

Under Massachusetts law, the law governing the Settlement Agreement (Ex. 4, § 8.13), contract interpretation is an issue of law. *116 Commonwealth Condominium Trust v. Aetna Cas. & Surety Co.*, 742 N.E.2d 76, 78 (Mass. 2001). The parol evidence rule requires the exclusion of extrinsic evidence that might change the meaning of the terms of an unambiguous contract. *See Robert Indus., Inc. v. Spence*, 291 N.E.2d 407, 409 (Mass. 1973). Mere disagreement between the parties, as here, as to the proper meaning of a term of the agreement does not necessarily render it ambiguous.[3] *Lumbermans Mut. Cas. Co. v. Offices Unlimited, Inc.*, 645 N.E.2d 1165, 1168–69 (Mass. 1995). Even if the Settlement Agreement were ambiguous (it is not), the interpretation of a contract is a matter of law except where it turns on facts in genuine dispute. *See Robert Indus.*, 291 N.E.2d at 409–10. There are no facts in genuine dispute in this case; the only disputes are as to the interpretation of the terms of the Settlement Agreement.

### C. Aerocrine Enjoys A CNS Under The Silkoff Patents

#### 1. Allowing The CNS To Be Voided By A Simple Assignment Would Destroy The Benefit Of Aerocrine's Bargain

[REDACTED]

---

[3] Apieron has repeatedly admitted that the contract language is "plain" and that the language "clearly demonstrates" and "explicitly anticipates" the interpretation that Apieron urges. (D.I. 75, pp. 2 and fn. 2, 6.) Apieron even argues that the Court should rule in Apieron's favor on the issue "as a matter of law". (*Id.* at 2 fn. 2.) If the contract language is plain, explicit, clear, and supports a ruling as a matter of law, then there is no ambiguity.



Apieron argues, however, that Aerocrine's CNS has been voided and that Aerocrine no longer enjoys the benefit of its bargain.

The only patent case that directly addresses whether a CNS is voided by assignment of the underlying patents is *V-Formation, Inc. v. Benetton Group SpA*, No. 02-02259, 2006 WL 650374 (D. Colo. Mar. 10, 2006) (granting summary judgment) (copy at Ex. 8). Just like the facts here, in *V-Formation*, K-2 granted a CNS to Benetton, K-2 then assigned the patents to V-Formation, and V-Formation sued Benetton for infringement. *Id.* at *4. V-Formation argued that it was not bound by the CNS. The court disagreed, stating that if the CNS:

> were not transferable with the patent, it could be rendered meaningless and avoidable by a simple assignment of the patent to another. Such circumstance would ***destroy the benefit of the bargain*** received by each of the parties to the settlement agreement, which could not be the intent of the settlement agreement . . . .

*Id.*

The court concluded that upholding the CNS "does not deprive V-Formation of its ownership interest in the patents; it merely limits its right to sue one entity (Benetton) for infringement." *Id.* at *8.

The fact pattern in *V-Formation* is almost exactly the same as here. In both cases a CNS was granted to settle infringement litigation, the underlying patents were then assigned to

a third party, and the third party sued the beneficiary of the CNS arguing that the CNS was voided by the assignment. On these facts, the *V-Formation* court granted summary judgment, finding that to void the CNS would destroy the benefit of the bargain. That should be the result here too. Ionics retains the benefit of its bargain; so too should Aerocrine. It would be incongruous for Ionics to be able to assign the Silkoff patents and void the paid-up CNS, while retaining a paid-up license under the Silkoff patents and receiving 25% of any royalties paid to Apieron by Aerocrine. (Ex. 7, §§ 2.2 (b), 3.1.)

### 2.   Ionics Could Assign, And Did Assign, To Apieron Only The Rights It Owned In The Silkoff Patents

A CNS deprives the grantor of the right to sue. In *V-Formation* the court concluded that at "the time of the assignment, [K-2's] right, title and interest did not include a right to sue Benetton for patent infringement, as that right had been waived by virtue of the prior settlement agreement." 2006 WL 650374 at *5. Likewise, after Ionics granted the CNS to Aerocrine, Ionics no longer owned the right to sue Aerocrine for infringement of any of the Silkoff patents, and thus could not assign that right to Apieron.

As a matter of law, Ionics could not assign the right to sue Aerocrine, and in fact Ionics did not contract to assign that right. In the Assignment Agreement, Ionics stated *four times* that it was only assigning *its* rights in the patents. The first recital states that "WHEREAS, Ionics has agreed to assign to Aperon all *its* rights, title and interest in and to the certain patents . . . ." (Ex. 7.) Next, Ionics represented and warranted in §2.4 that, upon completion of the Assignment Agreement, it would have transferred "*its* entire right and interest in the Assigned Patents to Aperon." Third, in §3.3, Ionics "acknowledge[d] and agree[d] that all *Ionics*' rights, title and interest in and to the Assigned Patents are the sole and exclusive property of Aperon . . . ." Finally, the actual assignment (Exhibit B to the Assignment Agreement) states that Ionics

"hereby . . . sells, assigns, transfers and sets over to ASSIGNEE *its* entire worldwide right, title and interest . . . in and to the Patents . . . ."

But that is not all. Exhibit B further confirms that Apieron received only the rights that Ionics owned, stating that after the assignment, Apieron would have the Silkoff patents "for its use and enjoyment . . . *as the same would have been held and enjoyed by ASSIGNOR if the assignment and sale had not been made.*" Accordingly, because Ionics had previously contracted away the right to sue Aerocrine, it could not assign that right to Apieron.

One section of the Assignment Agreement, § 2.1, does refer to "all rights," however that statement is qualified: "*subject to the terms and conditions of this Agreement*, Ionics hereby assigns to Apieron *all* rights, title and interest in and to the patents . . . ." The terms and conditions of the Agreement and the attached Assignment, as discussed above, made plain that Ionics was assigning only *its* rights to Apieron.

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████████ Ionics represented to Apieron only that "after the consummation of the transactions contemplated hereby, Ionics shall have transferred *its* entire right and interest in the Assigned Patents to Aperon." (Ex. 7, § 2.4.)

3.   **The CNS Is Binding On Ionics' Assigns**

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

- 10 -

[REDACTED]

The *V-Formation* court analyzed the same issue based on similar contract provisions. The K-2 - Benetton contract provided that (1) it is binding on K-2's "'successors, assigns [and] representatives,'" and (2) "'K-2's and Benetton's [CNSs] are not assignable or otherwise transferable, other than as part of the transfer of the entire business to which the covenants relate.'" *V-Formation*, at *3–4. The corresponding provisions in the Aerocrine - Apieron Settlement Agreement are §§ 8.5 and 8.2. *Supra*, pp. 3–4.

The *V-Formation* court noted that "V-Formation is an assignee of the two patents from K-2" and "the parties intended the Agreement to be binding on the parties' successors, predecessors and assigns . . . ." *Id.* at *4. V-Formation argued that the second provision quoted above precluded assignment of the CNS. *Id.* The court concluded, however, that the CNS was not assigned to V-Formation, but only K-2's rights in the underlying patents. *Id.*

The *V-Formation* court explained that the restriction on transferability (§ 22 in *V-Formation*, § 8.2 in this case) applied to the "right to be free from patent infringement claims" so that the beneficiary could not have "in effect an unlimited right to sublicense." *Id.* at *5. [REDACTED] The court expressly held that the assignment of the patent had no effect on the beneficiary's rights under the covenant. *Id.* The same is true here.

[REDACTED]



## IV. CONCLUSION

For the foregoing reasons, summary judgment should be granted as a matter of law that the assignment to Apieron did not void Aerocrine's CNS under the Silkoff patents, and Apieron's counterclaims for infringement should be dismissed.

                    MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                    */s/ Thomas C. Grimm*

                    Jack B. Blumenfeld (#1014)
                    Thomas C. Grimm (#1098)
                    1201 North Market Street
                    P.O. Box 1347
                    Wilmington, DE 19899
                    (302) 658-9200
                    jblumenfeld@mnat.com
OF COUNSEL:         tgrimm@mnat.com

Kelsey I. Nix
Diane C. Ragosa         *Attorneys for Plaintiffs Aerocrine AB and*
Robert G. Kofsky           *Aerocrine Inc.*
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000

March 16, 2010 - Original Filing Date
3451800
March 23, 2010 - Redacted Filing Date

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2010, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

>Jeffrey L. Moyer, Esquire
>Sarah R. Stafford, Esquire
>RICHARDS, LAYTON & FINGER, P.A.

I also certify that copies were caused to be served on March 16, 2010, upon the following in the manner indicated:

### VIA ELECTRONIC MAIL

>Jeffrey L. Moyer, Esquire
>Sarah R. Stafford, Esquire
>RICHARDS, LAYTON & FINGER, P.A.
>One Rodney Square
>920 North Market Street
>Wilmington, DE 19801
>
>Bruce R. Genderson, Esquire
>Edward J. Bennett, Esquire
>David I. Berl, Esquire
>Thomas J. Roberts, Esquire
>WILLIAMS & CONNOLLY LLP
>725 Twelfth Street, N.W.
>Washington, DC 20005

*/s/ Thomas C. Grimm*
_____
Thomas C. Grimm (#1098)

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2010, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

>Jeffrey L. Moyer, Esquire
>Sarah R. Stafford, Esquire
>RICHARDS, LAYTON & FINGER, P.A.

I also certify that copies were caused to be served on March 23, 2010 upon the following in the manner indicated:

### VIA ELECTRONIC MAIL

>Jeffrey L. Moyer, Esquire
>Sarah R. Stafford, Esquire
>RICHARDS, LAYTON & FINGER, P.A.
>One Rodney Square
>920 North Market Street
>Wilmington, DE  19801
>
>Bruce R. Genderson, Esquire
>Edward J. Bennett, Esquire
>David I. Berl, Esquire
>Thomas J. Roberts, Esquire
>WILLIAMS & CONNOLLY LLP
>725 Twelfth Street, N.W.
>Washington, DC  20005

*/s/ Thomas C. Grimm*

Thomas C. Grimm (#1098)