IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


AEROCRINE AB and AEROCRINE INC.,     :

                                        :

                Plaintiffs,       :

                                          :

     v.                          :     Civ. No. 08-787-LPS

                                          :

                                        :

APIERON INC.,                      :

                                        :

                Defendant.      :


## ORDER REGARDING DISCOVERY MATTERS


The plaintiffs in this patent infringement action are Aerocrine AB and Aerocrine Inc. (collectively "Aerocrine"). Now pending before the Court are two discovery motions filed by Defendant Apieron Inc. ("Apieron"). They are Apieron's Motion to Compel Aerocrine to Make Inventors Available for Testimony and Produce its Accused Device ("Motion to Compel") (D.I. 95) and Apieron's Motion for the Issuance of Letters of Request for International Judicial Assistance Pursuant to the Hague Convention of March 18, 1970 ("Motion for Letters") (D.I. 86). For the reasons set forth below, Apieron's Motion to Compel is **GRANTED IN PART AND DENIED IN PART** and Apieron's Motion for Letters is **GRANTED**.


## BACKGROUND

This is a patent case involving medical devices capable of measuring nitric oxide levels in exhaled breath. Aerocrine alleges infringement of three of its patents – U.S. Patent No. 5,922,610 (the "'610 patent"), U.S. Patent No. 6,038,913 (the "'913 patent"), and U.S. Patent No.

6,733,463 (the "'463 patent") – by Apieron's sale of its own device for measuring exhaled nitric oxide. (D.I. 86 at 1)  Aerocrine filed its complaint on October 21, 2008. (D.I. 1)  In its defense, Apieron has asserted that the '610, '913, and '463 patents are invalid, that they are not infringed, and that the '463 patent is unenforceable because of the inequitable conduct of its two inventors, Drs. Eeva Moilanen and Lauri Lehtimäki, during prosecution. (D.I. 86 at 2)

On September 30, 2009, Apieron filed its Motion for Letters relating to testimony and documents Apieron seeks to obtain from two foreign-based inventors of one of Aerocrine's patents-in-suit. (D.I. 86)  Specifically, the Motion for Letters relates to Drs. Moilanen and Lehtimäki, inventors of Aerocrine's '463 patent, both of whom are residents of Finland.  Apieron attests that these witnesses have information relevant to whether Aerocrine's patents-in-suit are valid, whether Apieron's device infringes Aerocrine's patents-in-suit, and whether the '463 patent is unenforceable due to the '463 inventors' inequitable conduct during prosecution. (*Id.* at 3)  Aerocrine does not oppose Apieron's Motion for Letters, so long as: (1) the depositions are conducted in Finnish (the native language of Drs. Moilanen and Lehtimäki), (2) each deposition is limited to seven hours, and (3) the parties ask the Finnish Court to close the courtroom during the depositions due to the confidential nature of the testimony to be elicited. (D.I. 94 at 1)  Apieron insists that, if the depositions are to be conducted in Finnish, the parties make "reasonable accommodation for additional time if needed due to time required for translation." (D.I. 111 at 1)

On October 19, 2009, Apieron moved to compel Aerocrine to (among other things) make its inventors available for depositions in the United States or, in the alternative, reimburse Apieron for costs associated with taking these depositions abroad. (D.I. 95 at 5-9)  The Motion

to Compel also seeks production of two of Aerocrine's current NIOX™ devices accused of infringement in Apieron's counterclaims. (D.I. 95 at 5)  Briefing on the Motion to Compel was completed in November 2009. (D.I. 120; D.I. 128)[1]

On March 11, 2010, in connection with a forthcoming discovery teleconference, Apieron submitted a letter request that the Court compel Mats Carlson, Aerocrine's Vice President of Technical Operations and Development, to appear in the United States for a deposition. (D.I. 191)  During the March 15, 2010 teleconference, the Court granted Aerocrine's request and ordered that Carlson's deposition take place in the United States. (D.I. 198 at 13)  The Court did not rule on the deposition location issues (or the accused device production issue) raised in the Motion to Compel.

The parties consented to the jurisdiction of the undersigned magistrate judge on February 25, 2010. (D.I. 186)  The Court held a discovery and status teleconference on March 15, 2010 and received additional submissions from the parties on March 16 and 17, 2010. (D.I. 198; D.I. 199; D.I. 203)

## LEGAL STANDARDS

District courts have broad discretion to manage discovery. *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d Cir. 1995); *Deere & Co. v. Int'l Harvester Co.*, 710 F.2d 1551, 1558 (Fed. Cir. 1983).  In particular, district courts have great discretion in designating the location of a deposition, "and thus each application must be considered on its own facts and

---

[1]Apieron originally sought to compel production of other devices and responses to interrogatories, but the parties subsequently narrowed their disputes to those addressed in this Order. (D.I. 199 at 1; D.I. 128 at 4; D.I. 120 at 3; D.I. 95 at 4-5)

equities." *South Seas Catamaran, Inc. v. The Motor Vessel "Leeway,"* 120 F.R.D. 17, 21

(D.N.J. 1998).

## DISCUSSION

### I.      Location of Inventor Depositions

Both of Apieron's motions, its Motion to Compel and its Motion for Letters, address the

disputed issue of the location of the depositions of inventors of the Aerocrine patents-in-suit.  A

total of eight inventors of the Aerocrine patents are at issue.  With respect to each of them,

Apieron seeks an order compelling the inventor to appear for a deposition in the United States.

For certain of the inventor-witnesses, Apieron seeks, in the alternative, to take their depositions

in the country of the witness' residence (Finland or Sweden), provided that Aerocrine reimburses

Apieron's expenses in connection with traveling to take the depositions.  Apieron's Motion for

Letters requests that, if the Court does not compel the depositions in the United States of two of

the inventors (Drs. Moilanen and Lehtimäki), then instead the Court authorize utilization of the

procedures of the Hague Convention to compel testimony and/or documents from these two

inventors in a Finnish court setting.

### A.      Caselaw and other authority

The general rule with respect to the location of depositions is that the plaintiff must

produce its witnesses in the district in which the plaintiff instituted the action, "unless the

plaintiff has shown financial hardship or inability to attend the deposition in that district." *Bayer*

*AG v. Sony Elecs. Inc.*, No. 95-8-JJF, slip op. at 5 (D. Del. Sept. 30, 1998) (D.I. 95 Attachment

1); *see also South Seas Catamaran*, 120 F.R.D. at 21 ("[T]he general rule requir[es] plaintiff or

4

its agents to appear for the taking of depositions in the district in which the suit is brought.").

There is also, however, a "general presumption" that the "deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business." 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2112 (2d ed. 1994). "This is subject to modification, however, when justice requires." *Id.* Additionally, "'notwithstanding the generally recognized rule, courts have often required corporate defendants to produce their officers at locations other than the corporation's principal place of business where there has been no showing that the defendant will suffer any resulting financial hardship.'" *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 2005 U.S. Dist. LEXIS 22166, at *13-14 (D.N.J. Sept. 30, 2005) (quoting *South Seas Catamaran*, 120 F.R.D. at 21).

Several courts have addressed disputes over whether an agreement by which a non-U.S. resident inventor assigns patent rights to a business entity that is later involved in patent enforcement litigation obligates the inventor to appear in the United States for a deposition in connection with that litigation. These cases have been attentive to the specific facts, and in particular the specific language of the agreements with the inventors, presented in each case.

In *Amgen, Inc. v. Ariad Pharms. Inc.*, 2007 WL 1425854, at *2 (D. Del. May 14, 2007), the district court ordered three foreign-based inventors of the patents-in-suit to be deposed in the United States where their assignment agreements specifically required the "giving of testimony in any . . . other proceeding in which said invention . . . or patent . . . may be involved." In *Medpointe Healthcare Inc. v. Apotex Inc.*, 2007 WL 211202 (D. Del. July 26, 2002), an inventor had entered into an assignment agreement that included testimonial obligations with a predecessor company, but not with its successors and assigns. The *Medpointe* court concluded

that the agreement's language relating to inventor testimony did not extend to successors and assigns; and, given the inventor's consent to Hague Convention protocol, providing testimony pursuant to the Hague Convention was the most appropriate manner in which to proceed. *See id.* at *2. In *Minebea Co. v. Papst*, 370 F. Supp. 2d 302, 308 (D.D.C. 2005), the court considered several assignment agreements executed by foreign-based inventors. The first agreement obligated the inventors to "render such assistance . . . as may be necessary to perfect the title" to the patents at issue, which the court found was too "tenuous" of a justification for ordering the inventors to travel to the U.S. for trial proceedings. However, another group of agreements specifically required the inventors to "testify" in any legal proceeding or litigation for the patent-holder, and, hence, the court ordered a witness who was subject to these latter agreements to be produced in the United States. *See id.* at 309-10. By contrast, in *Murata Mfg. Co. v. Bel Fuse, Inc.*, 242 F.R.D. 470, 480 (N.D. Ill. 2007), the court required a foreign-based inventor to testify at a deposition even though his assignment agreement did not include the word "testify" – but the court did not require this inventor's deposition to be held in the U.S. *See id.* at 480 ("I do not think the absence of the word 'testify' is dispositive of the question of whether the agreement in this case obligated [the non-party inventor] to be deposed . . . ."); *see also Yaskawa Elec. Corp. v. Kollmorgen Corp.*, 201 F.R.D. 443, 444 (N.D. Ill. 2001) (requiring depositions of foreign-based inventors who agreed to "testify in all legal proceedings," but finding that they had not "contracted to be deposed in a particular place" and, therefore, permitting depositions to be held outside U.S.).

**B.     Drs. Moilanen and Lehtimäki**

Dr. Eeva Moilanen and Dr. Lauri Lehtimäki are co-inventors of the '463 patent and

currently reside in Finland.  Apieron argues that, although not presently employed by Aerocrine,

Drs. Moilanen and Lehtimäki are within Aerocrine's "ambit of control" and should be produced

for depositions in the United States.  (D.I. 95 at 9)  Both were consultants for Aerocrine from

2007 to 2008 and earned annual salaries from Aerocrine.  (*Id.*)  Both have also cooperated with

Aerocrine to search for and collect documents in their possession that are relevant to this case.

(*Id.*)  Aerocrine has rights under assignment agreements with Drs. Moilanen and Lehtimäki.  (*Id.*)

Apieron contends that Aerocrine should bring Drs. Moilanen and Lehtimäki to be deposed in the

U.S. or, if it does not, Aerocrine should be precluded from calling either of them to testify at trial.

(D.I. 128 at 9)

Aerocrine replies that it has no control over either Dr. Moilanen or Dr. Lehtimäki, and

that neither has had a relationship with Aerocrine since their consulting arrangements ended in

2008.  (D.I. 120 at 5)  Aerocrine observes that the assignment agreements Drs. Moilanen and

Lehtimäki entered into with Aerocrine do not reference providing any testimony in connection

with enforcing the '463 patent in the U.S.  (*Id.*)  Instead, Drs. Moilanen and Lehtimäki agreed

only to "execute and deliver . . . documents, forms, and authorizations necessary for the

registration of the assignment of the Patents . . . and to provide all other reasonable assistance . . .

in order to perfect [Aerocrine's] title to the Patents."  (D.I. 121 Ex. C at AER00109176)

Therefore, Aerocrine maintains that the Hague Convention protocol is the only avenue by which

to compel testimony from Drs. Moilanen and Lehtimäki.

Apieron's motion to compel Drs. Moilanen and Lehtimäki to travel to the United States

to be deposed is **DENIED.**  Drs. Moilanen and Lehtimäki are not currently agents of or otherwise

engaged with Aerocrine, and their patent assignment agreement does not contain particularized

language obligating them to appear in the United States for a deposition. Their agreement does not specifically obligate them to testify, and, even if it did, the actions prescribed in the agreement are only for the purpose of perfecting Aerocrine's title to the '463 patent. They do not extend to litigation to enforce the patent.

Apieron's concurrent Motion for Letters with respect to Drs. Moilanen and Lehtimäki is **GRANTED**. The parties will make reasonable accommodations to extend the length of the depositions if they are conducted in a language other than English.

### C.   Drs. Lundberg and Weitzberg

Apieron argues that Dr. Jan Lundberg is a co-founder of Aerocrine, co-inventor of the '610 patent, and a current holder of Aerocrine stock, rendering his connection to Aerocrine "deep" enough that Aerocrine should make him available for a deposition in the United States. (D.I. 95 at 6-7) Dr. Lundberg has cooperated with Aerocrine in searching for and producing documents relevant to this case. (*Id.* at 7 n.3) Apieron also asserts that Dr. Lundberg was a signatory to a stock option agreement dated April 11, 2007 (the "April 2007 agreement") with Aerocrine, which purportedly requires Dr. Lundberg to "be available for work for the company, for up to ten days per calendar year in connection with . . . activities, such as . . . activities for development and protection of intellectual property rights." (D.I. 191 at 3; D.I. 203)[2] In Apieron's view, this provision means that Aerocrine can call upon Dr. Lundberg to assist in

---

[2]The Court notes that the translation of the April 2007 agreement supplied by Apieron is uncertified and was generated by computer software. *See* D.I. 191 at 3 n.5. Aerocrine charges that this translation is "incomplete," but does not specify how. (D.I. 195 at 3) Aerocrine has supplied an alternative translation of the April 2007 agreement, which is also uncertified and which contains omissions. (D.I. 195 at Ex. 4) The two versions do not appear to be materially different in terms of substance.

defending its intellectual property, "such as in the present litigation." (*Id.*) Apieron thus believes that Dr. Lundberg is contractually obligated to testify in this case and is sufficiently under Aerocrine's control to warrant requiring him to appear for a deposition in the United States.

Aerocrine responds that Dr. Lundberg has not had any engagement with respect to the patents-in-suit since co-founding Aerocrine in 1997. (D.I. 120 at 5; D.I. 195 at 3) Aerocrine asserts that the April 2007 agreement "refers to the post-2007 inventions that are the subject of that agreement . . . not the patents at issue here." (D.I. 195 at 3) Further, the assignment agreement for the '610 patent signed by Dr. Lundberg only requires Dr. Lundberg "to execute all papers necessary in connection with this application [or] any interference which may be declared concerning this application," and "to perform all affirmative acts which may be necessary to obtain a grant of a valid [U.S. patent]'" (D.I. 121 Ex. D at AER00031420) Therefore, Aerocrine denies that Dr. Lundberg is under Aerocrine's control or has a contractual obligation to testify in the instant case.

Like Dr. Lundberg, Dr. Edward Weitzberg is a co-founder of Aerocrine, co-inventor of the '610 patent, and currently holds Aerocrine stock. (D.I. 95 at 6-7) Dr. Weitzberg served as President of Aerocrine from 1997 to 1998 and sat on the Board of Directors from 1997 through 2006. (*Id.*) Like the other inventors, Dr. Weitzberg has cooperated with Aerocrine by searching for and producing relevant documents. (*Id.* at 7 n.3) Apieron contends that Dr. Weitzberg is also party to the April 2007 agreement with Aerocrine and, thus, is contractually obligated to testify in this case.

Aerocrine argues that Dr. Weitzberg, like Dr. Lundberg, has not had any engagement with respect to the patents-in-suit since co-founding Aerocrine in 1997. (D.I. 120 at 5; D.I. 195 at 3)

Again, Aerocrine contends that the April 2007 agreement "refers to the post-2007 inventions that are the subject of that agreement . . . not the patents at issue here." (D.I. 195 at 3)  Additionally, Dr. Weitzberg's assignment agreement relating to the '610 patent only requires him "to execute all papers necessary in connection with this application [or] any interference which may be declared concerning this application" and "to perform all affirmative acts which may be necessary to obtain a grant of a valid [U.S. patent]." (D.I. 121 Ex. D at AER00031420) Therefore, Aerocrine denies that Dr. Weitzberg is under Aerocrine's control or has a contractual obligation to testify in connection with this case.

Apieron's motion to compel Drs. Lundberg and Weitzberg to travel to the United States to be deposed is **DENIED**.  Apieron has not established that Drs. Lundberg and Weitzberg are under the control of Aerocrine, such that they could be compelled to come to the United States for a deposition.  Neither Dr. Lundberg nor Dr. Weitzberg is currently an employee or officer of Aerocrine.  Merely holding a share of a company's stock, or being the inventor of a patent that the company is attempting to enforce, are not sufficient bases in and of themselves to justify compelling a non-U.S. resident to appear in the U.S. for a deposition.  The contractual obligations Drs. Lundberg and Weitzberg assumed under the April 2007 agreement appear to relate only to their post-2007 inventions, and not the patents-in-suit here.  There is, thus, no basis to compel Drs. Lundberg and Weitzberg to appear in the United States for depositions.

### D.    Drs. Persson and Stromberg

Dr. Gunnar Persson and Dr. Stefan Stromberg are co-founders of Aerocrine and co-inventors of the '913 patent in suit. (D.I. 95 at 7; D.I. 96 Ex. J at 3)  Both executed an assignment agreement with Aerocrine regarding the '913 patent that included the following

obligations:

> to testify in any judicial or administrative proceeding and generally to do everything possible to aid [Aerocrine] to obtain and enforce said letters Patent in the United States when requested to do so by [Aerocrine].

(D.I. 96 Ex. L at AER00031423)  Apieron argues that this language is similar to the assignment

agreements that courts have held obligate inventors to be deposed in the United States.  (D.I. 95

at 7 (citing *Amgen,* 2007 WL 1425854, at \*1; *In re Nifedipine Capsule Patent Litig.*, 1989 WL

111112, at \*1 (S.D.N.Y. Sept. 20, 1989)))  Apieron distinguishes the current dispute from

*Medpointe*, 2007 WL 211202, because here the '913 assignment agreement "is made directly

with Aerocrine, and explicitly and unequivocally requires [the '913 patent's inventors] to testify

in the United States upon Aerocrine's request."  (D.I. 95 at 8)

    Aerocrine argues that Drs. Persson and Stromberg agreed only "to testify in connection

with this action to enforce [the '913 patent] in the United States," which is not a specific

agreement to travel to the United States to be deposed.  (D.I. 120 at 7)  Relying on *Medpointe*,

2007 WL 211202, at \*2, Aerocrine argues that an inventor who contracts to "do everything

necessary or desirable" does not necessarily agree to an "American-style deposition."  (D.I. 120

at 7)  To Aerocrine, even agreeing "'generally to do everything possible to aid [assignee] in

obtaining and enforcing patents . . . in all countries'" does not provide a basis for compelling

deposition testimony.  (*Id.* at 7-8 (quoting *Litetronics Int'l, Inc. v. Tech. Consumer Prods.*, 2006

U.S. Dist. LEXIS 76224, at \*4 (N.D. Ill. Sept. 28, 2006)))  Aerocrine thus contends that

"explicit" language – not included in the '913 patent assignment agreement – is required to

compel a foreign-based inventor to be deposed in the United States.  *See id.* at 8 (citing *Murata*,

242 F.R.D. at 480 and *Yaskawa*, 201 F.R.D. at 444).

Apieron's motion to compel Drs. Persson and Stromberg to travel to the United States to be deposed is **GRANTED**.  Drs. Persson and Stromberg are parties to an assignment agreement that specifically contemplated the provision of testimony for purposes of enforcing the patent rights that were the subject of the assignment agreement; it also specifically references enforcement in the United States.  *Medpointe* is inapposite since it was primarily concerned with whether the assignment agreement extended rights to the assignee's successors and assigns, an issue that is not presented here.  *See* 2007 WL 211202, at *2.  By contrast, in *Amgen*, as here, the inventors' assignment agreements were made directly with the current patent-holder, and specifically obligated the inventors to testify in any legal proceeding regarding their patents.  *See* 2007 U.S. Dist. LEXIS 35076, at *5-11; *see also Minebea*, 370 F. Supp. 2d at 308-09 (ordering inventors to testify in United States based on assignment agreements that contemplated testimony and general enforcement of patent in the U.S.).

Moreover, to the extent there is any doubt as to whether the language of the '913 assignment agreement requires Drs. Persson and Stromberg to appear in the U.S. for a deposition, the Court concludes that the appropriate exercise of its discretion, considering the totality of circumstances, is to resolve those doubts in favor of requiring the depositions in this country.  The Court is not persuaded that this ruling will impose an undue burden on Aerocrine or Drs. Persson and Stromberg.

### E.    Drs. Alving and Gustafsson

Dr. Kjell Alving is a co-founder of Aerocrine, a co-inventor of the '610 patent, and is currently serving (and being compensated) as Aerocrine's Director of Clinical Development and

Medical Affairs, a position he has held since August 2007. (D.I. 95 at 6) Dr. Lars Gustafsson is also a co-founder of Aerocrine, a co-inventor of the '913 patent, and is currently serving (and being compensated) as a member of Aerocrine's Board of Directors, a position he has held since 1997. (*Id.* at 7) Apieron argues that these inventors must be produced by Aerocrine for a deposition in the United States because they are, respectively, a current Aerocrine officer and director. (*Id.*) Apieron adds that Aerocrine has admitted that Dr. Alving is under its control (*id.* (citing D.I. 96 Ex. H at 1)) and has "impliedly conceded" that both Dr. Alving and Dr. Gustafsson may be compelled to appear in the United States to be deposed (D.I. 128 at 5).

Aerocrine acknowledges that it has an ongoing relationship with Drs. Alving and Gustafsson, and appears to concede that they could be compelled to travel to the U.S. (D.I. 120 at 9) Nonetheless, Aerocrine argues that in light of the possibility that several inventors will be deposed in Sweden, it makes the most practical sense to depose Drs. Alving and Gustafsson in Sweden as well. (*Id.*) Deposing Drs. Alving and Gustafsson in Sweden would, according to Aerocrine, improve the efficiency of the depositions and limit the burdens of international travel to fewer witnesses. (*Id.*)

Apieron's motion to compel Drs. Alving and Gustafsson to travel to the United States to be deposed is **GRANTED**. Generally, officers, directors, and managing agents of a plaintiff are expected to be deposed within the forum district in which the plaintiff has chosen to file suit. Dr. Alving is an officer of Aerocrine and Dr. Gustafsson is a member of its Board of Directors. Aerocrine has essentially conceded that both are under Aerocrine's control (for purposes of discovery). Aerocrine has not provided evidence of either witnesses' financial hardship or inability to attend a deposition in the United States. It is entirely debatable whether it would be

more efficient for these depositions to occur in Sweden or the United States. That is a call that Apieron, as the party that has been sued in the District of Delaware, has the right to make, under the circumstances presented here.

**II.     Apieron's Motion to Compel Production of Two NIOX™ Devices**

Among the items Apieron seeks to obtain through its Motion to Compel are two of Aerocrine's current NIOX™ devices accused of infringement in this case. (D.I. 95 at 5) Apieron argues that it requires the two NIOX™ devices in order to "understand with more specificity" how the relevant parts of the accused NIOX™ devices work and that this issue bears directly on the infringement allegations at the center of this case. (*Id.* at 4) Apieron asserts that it needs unrestricted use and access to the NIOX™ devices because it plans to test and/or "dissemble the device to see how it works." (*Id.* at 5) Apieron would return the NIOX™ devices at the close of this litigation. (*Id.*) Further, in Apieron's view, there is no authority either to charge Apieron for the NIOX™ devices at their retail or list price (as opposed to the real cost to Aerocrine) or to deny production because the requested devices each weigh 80 pounds. (*Id.*; *see also* D.I. 128 at 4-5.) Finally, Apieron insists that requiring production of the NIOX™ devices would not unreasonably inflate the costs of this case, given the substantial sums that both sides have already spent in this litigation and the fact that the suit was initiated by Aerocrine. (D.I. 95 at 5)

Aerocrine responds that producing two NIOX™ devices without reimbursement is unreasonable and unduly burdensome. (D.I. 120 at 4) Apieron has admitted that it obtained one NIOX™ device in or around March 2004, presumably for "regulatory purposes." (*Id.*) Aerocrine proposed making one NIOX™ system available at its offices for Apieron's inspection and testing, but Apieron rejected this offer. (*Id.*) Aerocrine also proposes a "compromise,"

whereby the parties split the retail cost of a NIOX™ device, apparently somewhere between $22,000 and $30,000.  (*Id.*; *see also* D.I. 128 at 4)  Additionally, Aerocrine argues that Apieron's promise to return the NIOX™ devices after this litigation is completed is "hollow, given that Apieron intends to 'dissemble' the system 'to see how it works.'"  (D.I. 120 at 4)  Aerocrine thus insists that Apieron should be required either to purchase a NIOX™ device or inspect one at Aerocrine's offices.  (*Id.*)

**IT IS HEREBY ORDERED THAT** Aerocrine must produce to Apieron one (1) NIOX™ system, with consumables.  Apieron will return the NIOX™ system to Aerocrine at the close of this litigation.  This resolution minimizes the cost to Aerocrine while at the same time permitting Apieron to undertake the additional infringement analysis it contends will be central to its case.

Dated: March 30, 2010

_____
Leonard P. Stark
UNITED STATES MAGISTRATE JUDGE